CUSHMAN CHUCK COMPANY,
Plaintiff,

v.

WHITON MACHINE COMPANY,
Defendant.

Civ. No. 4679.

United States District Court
D. Connecticut.

May 25, 1956.

Steward & Steward, New Haven, Conn., for plaintiff.

Roger B. McCormick, Hartford, Conn., for defendant.

J. JOSEPH SMITH, Chief Judge.

This is an action for infringement of a Schuster U. S. patent No. 2,401,971 on a device called by plaintiff its "Accromatic" power chuck. The defenses are invalidity and noninfringement. Both plaintiff's device and the accused device of the defendant, an embodiment of Highberg patent No. 2,687,308, have as their principal advance over others in the art means for fine adjustment of individual jaws of a multi jaw power chuck to obtain precise centering of the workpiece or tool held by the chuck during machining operations. A chuck is a holding device, in its simpler forms similar to the holding device which grips the bit in the familiar carpenter's brace and bit. A power chuck is one in which the gripping pressure of the jaws is furnished by pneumatic or other power. Prior to the development of the devices in suit a standard form of power chuck with multiple jaws was the step by step American Standard form, in which each master jaw to which the power was applied had attached to it a work-gripping false jaw which could be moved relative to the master jaw toward or away from the work-piece in steps along a series of teeth and grooves, on the surfaces of the two jaws which engaged each other, at right angles to the direction of movement toward and away from the work-piece, the false jaw being firmly attached to the master jaw by bolts when the desired step was reached. No provision was made for fine adjustment within the steps, that result apparently being obtained by machining of the faces of one or more of the work-holding or false jaws.

Between-step adjustment by screw type mechanism is revealed by an earlier patent. It is probably true, however, that there is more play and more difficulty in setting to fine adjustment the screw type device than the transverse wedge or cam action of the devices in suit.

There is little convincing evidence of the extent of the need in the trade of the fine adjustment by other means than machining of jaw faces or the saving in time and expense by eliminating that necessity. The evidence developed the curious fact that the Accrolock device as furnished the trade in practice failed to provide fine adjustment through the full distance between steps, although when this was pointed out it proved a simple matter to modify the device and provide the full range.

Methods of providing movements by very small increments of parts of devices, in other fields, similar or equivalent to

the cam or wedge action used in these chucks are demonstrated to be old, as is usual in combination patents.

Was their use here merely an answer which would have occurred to any good mechanic skilled in the art faced with the problem, or did it require something more which can be called invention? Both devices in suit have apparently enjoyed some degree of commercial success. The ideas which make up the elements of the claims are found in the prior art. The question is whether the combination of them to obtain the device of the claims required "invention". That the combination was not easy to come by may be argued from several facts, most important perhaps that before Schuster fine adjustments were normally obtained by machining one or more jaws in place in the chuck—an obviously cumbersome method of adjustment. Other bits of proof of the desirability of such an advance are plaintiff's willingness to buy out the patent owner's entire operation to obtain the patent, the apparently substantial demand for chucks embodying in part at least the advantages of the patent, and the prompt development and adoption of the accused Highberg device by defendant after Highberg, who had been instrumental in plaintiff's acquisition of the Schuster patent, went from plaintiff's to defendant's employ.

It is true that independent jaw adjustment in a universal chuck had been provided before Schuster, by screw adjustable means. Those devices, however, were not a solution of the problem for two reasons, the coarser adjustment provided by the direct screw action, and the play in the mechanism soon caused by the fact that the gripping pressures were applied directly through the screw. Prior to Schuster, the trade still largely depended on step by step adjustment through the American Standard jaws, with fine adjustment where necessary by machining of one or more jaw faces in place in the chuck. Forkhardt had provided both step by step and screw activated (indirect) fine adjustment of multiple jaws, but the fine adjustment was universal only, not independent.

Independent individual adjustment of the top jaw was not new, screw type mechanism having been employed for that purpose, according to plaintiff's expert Johnson.

What was new was the accomplishment of fine independent individual adjustment by transverse movement of the key having splines engaged with serrations in the master jaw. As far as we recall, none of the screw type individually adjustable top jaws was on a serrated jaw type chuck.

Whiton's structure—the Highberg et al. patent—applies an idea similar to Cushman's, by a different construction, to the American Standard master jaw with straight transverse teeth.

Forkhardt has the screw activated angular rack to impart radial motion universally to the jaws—not for one jaw independently of the other, but the device to obtain the radial motion was familiar in the trade. Schuster applied it to the problem of obtaining fine independent adjustments of the false jaw— Highberg adapted similarly the American Standard by a somewhat equivalent device.

In plaintiff's embodiment of the Schuster patent, step by step, as well as fine adjustment between master and false jaw is possible although not mentioned in the claims. This is true also of the accused device. Defendant's device differs from Schuster in that the teeth in the American Standard master jaw were retained without change, while Schuster had altered them to oblique teeth as part of his fine adjustment mechanism, the same result being obtained by the oblique channel and corresponding land providing the operating contact between the two parts of Highberg's key. Since combination claims must be construed fairly narrowly, the means used by Highberg in obtaining the desired fine individual adjustment, substituting the two piece key member with no change in the master jaw teeth for the one piece key operating on the inclined teeth of the Schuster master jaw, may be considered not equivalents of Schuster's claims. Equivalent they are

in adopting screw activated key members moving transversely to the jaws, obtaining the fine radial adjustment of one jaw with relation to the other by sliding transversely along inclined surfaces. Schuster, however, provided one of the jaws with the obliquely inclined surface, whether described as oblique teeth or cam surfaces disposed obliquely. Particularly in view of the existence of the earlier independently adjustable jaws by the direct screw surface devices of Wescott and Singer, we may well restrict Schuster's claims to a construction narrower than the accused device, which uses something like the cam or wedge of Hall in a two piece key in place of the key of Schuster operating on the oblique teeth of Schuster's master jaw. The two piece key performs the same function as the device of Schuster's claims. The manner in which it does it, however, differs from that of Schuster's claims in not using oblique teeth or oblique surface of either jaw itself, but by providing camming action within the key. We hold therefore, that the accused device is not equivalent to the device of the patent, and that the patent, though valid, is not infringed.

Judgment may be entered for the defendant, dismissing the action, with costs.

### Findings of Fact.

1. The plaintiff, The Cushman Chuck Company, is a Connecticut corporation having its principal place of business at Hartford, Connecticut.

2. The defendant, The Whiton Machine Company, is a Connecticut corporation having its principal place of business at New London, Connecticut.

3. On June 11, 1946, United States Letters Patent No. 2,401,971 for Precision Chuck were duly issued to Harry I. Schuster of Milwaukee, Wisconsin, and plaintiff, The Cushman Chuck Company, is the owner of the entire right, title and interest in and to said letters patent by proper written assignment from said Harry I. Schuster, dated June 14, 1946 and recorded June 19, 1946 in the United States Patent Office at Liber P-207, Page 339, of the Assignment Records.

4. Claims 1, 2, 3 and 4 of the Schuster patent 2,401,971 involve invention over the prior art and are validly patented. These claims are as follows:

Claim 1. In a chuck, the combination with a master jaw having guide means and a false jaw reciprocable along said guide means to and from work-engaging positions, one of said jaws being provided with a keyway and the other with a surface obliquely inclined respecting said guide means, a key interposed between the said jaws and disposed in said keyway and having a surface complementary to the oblique surface aforesaid, and means for adjusting the key transversely and for fixing its position in such adjustment whereby to effect and fix relative longitudinal adjustment between said jaws.

Claim 2. In a chuck, the combination with a master jaw having a guide slot and teeth disposed obliquely respecting said slot, of a false jaw reciprocable along the guide slot and provided with a transverse keyway, a key in the keyway having teeth complementary to the oblique teeth of the master jaw and meshed therewith, and means for moving the key transversely of the master jaw and fixing its position in such adjustment in the keyway of the false jaw whereby to effect adjustment of the false jaw along the guide slot of the master jaw

Claim 3. In a chuck comprising ? chuck head, a plurality of master jaws reciprocable radially of said head, and means for reciprocating the several master jaws in unison, the combination with a master jaw provided with a generally radial guide means, of a false jaw in splined connection with said guide means for generally radial movement respecting the master jaw, means for releasably clamping the said jaws in relative adjustment, and means effective upon the release of said clamping means for minutely adjusting the false jaw upon the master jaw along said guide means, the minutely adjusting means comprising

818

a key, screw means for moving the key in a direction transverse respecting said guide means, one of said jaws being provided with a slot in which said key is positioned and the other of said jaws and said key having meshing teeth obliquely disposed respecting said key slot and guide means.

Claim 4. In a device of the character described, the combination with two relatively reciprocable jaws, one of which is provided with a slot and the other with a spline fitted to the slot for determining the direction of relative reciprocation, of a key disposed transversely of the slot, one of said jaws being provided with a keyway in which said key is fitted and the key and the other of said jaws being provided with complementary cam surfaces disposed obliquely respecting the keyway and the slot, and screw means for fixing the position of the key, the transverse movement of the key determining the relative position of said jaws longitudinally of the slot.

5. Defendant has made and sold, within six years prior to the complaint in this action, and is still making and selling, in this district and elsewhere, power chucks with means for fine adjustment of individual work-engaging jaws by screw activated keys moving transversely of the jaws, having two parts contacting the jaws, one engaging straight teeth on the master jaw perpendicular to the path of the work-engaging movement of the jaws, the other engaging a keyway in the false jaw, the two parts of the key presenting to each other oblique cam or wedge surfaces.

6. Defendant's accused device does not infringe Claims 1, 2, 3, or 4 of the Schuster patent 2,401,971.

### Conclusions of Law

1. The Court has jurisdiction of the parties and subject matter of the action.

2. Claims 1, 2, 3 and 4 of Schuster patent 2,401,971 are valid.

3. Plaintiff has failed to establish that defendant has infringed Claims 1, 2, 3 or 4 of Schuster patent 2,401,971.

4. Defendant is entitled to judgment dismissing the action, with costs.